256 A.2d 219.

STATE *vs.* CLIFFORD W. WIGGIN.

JULY 23, 1969.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This indictment for rape was tried to a justice and jury of the superior court. The defendant was found guilty. The trial justice denied his motion for a new trial and sentenced him to a term of 10 years imprisonment. The matter is now before us on the defendant's exception to the trial justice's denial of his motion.

The prosecutrix was an 18-year-old housewife and mother at the time of this incident. She lived in an apartment building with her husband and infant son in the city of Newport. Her husband is a member of the Navy and is stationed at a local naval installation.

The defendant, age 39, is also a member of the Navy and stationed in Newport. He lived with a divorced woman, whom we shall call Mrs. B, in her apartment, which was directly next door to that of the prosecutrix. There were no other living quarters on that level.

Prior to the day with which we are now concerned, the complaining witness had never been formally introduced to defendant. She had assumed that he was Mrs. B's husband. She knew Mrs. B's name because on two occasions, the postman had given her mail addressed to Mrs. B and asked her to deliver it.

The day before the pertinent events took place, prosecutrix had been told to move her automobile by the Newport public works department. The car had broken down and she sought assistance from her next-door neighbors. Mrs. B invited her into her apartment to see her furniture. The

defendant was there, and offered to push prosecutrix's vehicle with his own. He did so and she thanked him for his help.

The only other conversation between the principals had taken place three days earlier on a Sunday. As the prosecutrix and her husband were standing in the hallway, they met Wiggin as he ascended the stairs. He greeted them pleasantly and went into Mrs. B's apartment. When he reentered the hallway, prosecutrix's husband was leaving. The conversation which ensued concerned the difficulty that prosecutrix's husband and defendant were having in starting their automobiles. The defendant had given prosecutrix's husband a ride to the naval base on two occasions. He informed prosecutrix that her husband was a "grouch" because he had remained taciturn while riding in Wiggin's car.

At the trial, defendant admitted having sexual intercourse with the complaining witness. The question for the jury was whether or not she had consented to the act. The jurors heard highly conflicting testimony on this issue from the principals. After nine hours of deliberation, they returned a verdict of guilty.

The prosecutrix's testimony can be summarized as follows:

At approximately 3:30 p.m. on the day of the episode, she heard a knock on her back door. Opening it, she found Wiggin standing in the hallway. After remarking that neighbors should get acquainted, he invited her into Mrs. B's apartment. The prosecutrix assumed that Mrs. B was at home and accepted the invitation. She first looked in on her sleeping infant and then followed defendant into the next-door apartment. Wiggin was in the kitchen preparing a drink. The prosecutrix had a cigarette and went to the kitchen to get an ashtray, returning to the living room where she sat on the couch. The defendant entered the

living room and handed her a drink. The prosecutrix, realizing that Mrs. B was not at home, told defendant that she had to leave, intending to go upstairs to a girlfriend's apartment. The defendant continued to talk and used insulting language toward prosecutrix's husband. The prosecutrix stood up and as she tried to leave, Wiggin grabbed her by the arms and pushed her down a hallway to the bedroom. He forced her onto the bed where he removed enough of her clothing to rape her. The prosecutrix testified that this happened in a matter of minutes, so quickly in fact, that everything was "flashing." When defendant grabbed her, she froze and was too dazed to scream. The defendant had his mouth over hers, and she did not know what he was going to do. The prosecutrix said she offered little resistance because of her slight stature. She is 5'3" tall and weighs approximately 120 pounds. The defendant stands 5'8" in height and weighs 200 pounds.

After the incident, prosecutrix returned to her own apartment and locked the door. She checked on her son who was still sleeping. She walked around for a few minutes in a daze. Her first instinct was to call her husband. She then went upstairs to her friend's apartment where two of her cotenants were, and after sitting silently for a few minutes, she blurted out what had happened. She then went downstairs to one of the cotenant's apartment and called the police.

The defendant's description of the incident was quite different. He testified that after he handed prosecutrix the drink, they sat down on the couch and began kissing. He said that she voluntarily went with him to the bedroom and disrobed. He denied using force. He fixed the duration of their meeting at about 15 minutes and estimated the events in the bedroom at approximately five minutes. He said that before prosecutrix left his apartment, she agreed to meet with him again.

The defendant seeks relief solely on the basis of his exception to the trial court's denial of his motion for a new trial. Careful review of the record reveals that this is the only exception which defendant preserved for our review. In so limiting his appeal, he necessarily challenges the correctness of the trial justice's ruling on that motion and nothing more. In order to prevail on this ground, defendant must show under our clearly-defined rule of criminal procedure governing a motion for a new trial that the trial justice's denial of his motion was either clearly wrong or that in his denial he overlooked or misconceived relevant and material evidence relating to a controlling issue. See *State* v. *Contreras,* 105 R. I. 523, 253 A.2d 612; *State* v. *Shilo,* 101 R. I. 533, 225 A.2d 524; *State* v. *Frazier,* 101 R. I. 156, 221 A.2d 468. At the trial, by agreement of the parties, the singular and thus controlling issue was whether or not defendant had utilized force in accomplishing his admitted sexual intercourse with the prosecutrix.

Despite the narrow and singular procedural ground upon which defendant has bedded his appearance in this court, his primary contentions here go far beyond the issues which can properly be raised by such an appeal. In essence, he argues that we should now, sua sponte, adopt a new rule of law for this jurisdiction, based upon the facts in his case, requiring some form of extraneous corroboration to a prosecutrix's testimony before a conviction for rape can lie. Even if we were, of our own initiative, disposed to adopt such a rule of law for our state, we could not do so on the basis of the record before us.

At the trial, defendant's counsel, when asked by the trial justice, declined to make any request for instructions to the jury as to the law governing the case. Though defendant concedes that there is no rule of law presently existing in this state which requires corroboration, he now nevertheless, and for the first time, asserts the applicability of that

principle to the facts of his case. But long-established rules of criminal procedure developed to insure order, uniformity and finality in criminal actions prohibit the formulation of such a rule in this case. In *State* v. *Andrews,* 86 R. I. 341, 134 A.2d 425, the defendant on appeal asserted that a rule on criminal responsibility different from the McNaghten rule now existing in this state was applicable to the facts of his case. The court held that the defendant's failure at the trial to make a request for instructions to the jury upon the law which he considered applicable precluded consideration of his argument that we reject the prior rule. See also *State* v. *Jefferds,* 89 R. I. 272, 152 A.2d 231. In short, defendant's concern as to the absence of a rule requiring corroboration in rape cases comes too late to benefit him. His failure to request an instruction to the jury on the law which he now asserts deprives him of any subject for review on that issue.

In further alleging that the trial justice erred, defendant maintains that prosecutrix's testimony was improbable and unworthy of belief. According to defendant, it is unbelievable that the prosecutrix could not have struggled, resisted or cried out while a man succeeded in pulling her Levi pants and undergarments completely off one of her legs. In addition, he disputes the probability of prosecutrix's testimony that she did not cry out because she did not know what was going to happen to her. Secondarily, defendant assigns error to the trial court's finding on his motion that defendant's story did not appear probable. He argues that the trial justice's statement to this effect overlooks the "probability" that the prosecutrix's accusation was motivated by a desire to vindicate her own willing participation in the act.

It would unduly lengthen this opinion to restate the trial justice's well-considered and careful review of the evidence on the motion for a new trial. The defendant freely ad-

mitted the fact of intercourse. The only task for the jury, and later for the trial justice, was to ascribe credibility to one of the principals. The jurors believed prosecutrix's testimony, and their verdict was upheld by the trial justice. In our opinion, defendant's factual arguments are far from persuasive in showing that the trial justice was clearly wrong or that he overlooked or misconceived relevant and material evidence relating to a controlling issue when he denied defendant's motion. After reviewing in detail all of the pertinent evidence in the case, the trial justice stated:

"So the narrow issue was, who do you believe in this case. Well, the Court watched the two important people involved in this case testify, the complaining witness and the defendant. The Court did not believe the defendant. The Court did believe the complaining witness."

Thereafter, the trial justice with clarity and precision discussed defendant's contentions as to the lack of corroborating circumstantial evidence to support the prosecutrix's statements that the act was non-consenting on her part. He alluded to the fact that no testimony was reported to show that prosecutrix sustained any marks or physical evidence of violence on her body as a result of the incident. He discussed the testimony indicating that the building in which the incident took place was not soundproof and that noises in other apartments could easily be heard. Finally, the trial justice referred to prosecutrix's testimony in which she admitted that she had made no outcry for assistance. In each of these instances, the trial court pointed to other matters which in his opinion discounted defendant's claim and supported the jury's finding.

In summary, we have scrutinized the record and can find no error in the trial justice's denial of the defendant's motion for a new trial.

The defendant's exception is overruled and the case is remitted to the superior court for further proceedings.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Assistant Attorney General, for plaintiff.

*Matthew J. Faerber, Joseph M. Hall*, for defendant.