627 P.2d 788

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Harvey Wilson BYERS,
Defendant-Appellant.**

**No. 13142.**

Supreme Court of Idaho.

April 1, 1981.

Rehearing Denied May 26, 1981.

Howard L. Armstrong, Jr., Pocatello, Ronald J. Yengich, Salt Lake City, Utah, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

BISTLINE, Justice.

Defendant-appellant Harvey Byers appeals from a jury conviction of rape. His principal contention on appeal is that there was insufficient corroboration of the prosecutrix's testimony to support the conviction.

The prosecutrix, who was separated from her husband and living with her infant, testified that on June 30, 1976, a man whom she had never seen before came by her apartment after 9:30 p. m. looking for another person. She gave him a glass of water, and he left. About 2:30 that night the prosecutrix heard a knock on her door. She attempted to turn on the porch light, but it was no longer functioning. She pulled back the curtain on the door and saw the same man, this time holding a gun with a blue barrel. He threatened her with the pistol to gain entrance and then raped her. After the rape, the prosecutrix and her assailant sat in the living room and talked for several minutes with the light on.

Immediately after her assailant left, the prosecutrix ran upstairs to her neighbors, appearing very distraught, and told them she had been raped. The prosecutrix described her attacker to the police as about 33 years old, 5'6", 175–80 lbs., heavy set with a pot belly and with black collar-length hair. She also told the police that he wore a wristwatch with a snap band and that the first time he came to her apartment he wore a green suit. A subsequent medical exam revealed prostatic fluid and dead sperm in the victim's vagina.

About a month and a half later the prosecutrix saw her assailant in a restaurant, but, apparently due to her stepmother's advice to forget the incident, she did not call the police. On March 9, 1978, twenty months after the rape, the police told the prosecutrix they had developed a new suspect and showed her five photos. She became upset on seeing Byers' photo and identified him as her assailant. She subsequently identified Byers in a line-up and at trial.

At the close of the state's case-in-chief, Byers moved to dismiss or advise the jury to acquit due to a lack of corroboration. The motion was denied. Byers then tried to establish his innocence by showing that he did not match the description given to the police by the prosecutrix and by showing his good reputation for truth, honesty and morality. Byers testified that he was and had been 5'9", 185–90 lbs. without a pot belly. Both he and his wife testified that he did not have a suit or watch as described by the prosecutrix, and that his appearance had not changed. Byers himself brought out that he owned several guns with blue barrels, and that he often carried one in the car with him. Byers' barber also testified that Byers always wore his hair short.

Finally, a number of witnesses testified as to Byers' reputation for truth, honesty and morality. In response to this, the prosecutor in cross-examination, over objections, established that Byers had gone out with his present wife while still married to his former wife.[1]

## I.

■ The first issue before us is whether there was sufficient corroboration of the testimony of the prosecutrix to support the verdict. The rule in Idaho has been that there must be corroboration both (1) that a crime has been committed and (2) that the accused committed that crime. *State v. Adair*, 99 Idaho 703, 587 P.2d 1238 (1978); *State v. Elsen*, 68 Idaho 50, 187 P.2d 976 (1947); *State v. Mason*, 41 Idaho 506, 239 P. 733 (1925). *See State v. Haskins*, 49 Idaho 384, 289 P. 609 (1930); *State v. Andrus*, 29 Idaho 1, 156 P. 421 (1916). As stated in *State v. Mason, supra*:

"We think what is meant by the rule 'the facts and circumstances surrounding the commission of the offense are corroboration and not contradictory of the statements of the prosecutrix' is that they must not only support the testimony of the prosecutrix that her person has been violated, but should also be of such a

1. Byers also alleges that the admission of this testimony constituted error. We need not decide this question in view of our resolution of the case.

character as to make it appear probable that the accused committed the offense." 41 Idaho at 510, 239 P. at 734.

Thus, the rule was recently stated in *State v. Adair, supra,* that "[t]he required corroboration need only *tend to support* her testimony that the offense was committed and make it *appear probable* that the accused was the perpetrator." 99 Idaho at 707, 587 P.2d at 1242.

Although there is sufficient corroboration here that the crime occurred, missing is any corroboration of the testimony of the prosecutrix that Byers was the person who committed the crime. The state suggests that the fact that Byers owned blue-barreled pistols, that he wasn't sure where he had been the night of the crime and that the prosecutrix became upset when she saw his picture are sufficient corroboration. We disagree. None of these factors make it appear probable that Byers was the perpetrator—the mere fact that he owned blue-barreled pistols does not separate him from countless others, nor does his failure, almost two years after the alleged crime, to remember where he was. Finally, corroboration must be by circumstances external to the testimony of the prosecutrix; the reaction of the prosecutrix to the accused or a photo of the accused cannot supply the needed corroboration any more than her own testimony can. There is therefore no corroboration in this case to support the testimony of the prosecutrix that Byers was the person who committed the rape.

## II.

■ The next question we take up is whether the requirement of corroboration in sex crime cases [2] has any continued validity.[3] There are three major suggested justifications for requiring corroboration: (1) the ease of fabrication and the fear of frequent false charges due to the emotion connected with the act of intercourse; (2)

the chance of conviction solely because of the emotional reaction of the jury to the alleged facts of the charge; and (3) the difficulty of disproving an accusation of rape. *See United States v. Sheppard,* 569 F.2d 114 (D.C. Cir. 1977); *State v. Cabral,* 410 A.2d 438 (R.I. 1980); The Rape Corroboration Requirement: Repeal Not Reform, 81 Yale L. J. 1365 (1972) [hereinafter Rape Corroboration Requirement].

These justifications, like the corroboration requirement itself, have come under increasingly heavy attack in recent years. *See, e. g., State v. Adair,* 99 Idaho 703, 705 n.2, 587 P.2d 1238, 1240 n.2 (1978). The latter two justifications seem insubstantial in light of available evidence which indicates that it is more difficult to convict for rape than for other major crimes, *see People v. Rincon-Pineda,* 14 Cal.3d 864, 123 Cal.Rptr. 119, 129–30, 538 P.2d 247, 257–59 (Cal.1975); Rape Corroboration Requirement, *supra* at 1382–84. As to the first justification, there is no evidence showing that sex crime charges are frequently falsified or that sexual victims are an inherently unreliable class whose testimony should not be believed in the absence of corroboration. *See People v. Rincon-Pineda, supra,* 123 Cal. Rptr. at 118–119 at 256–57; Rape Corroboration Requirement, *supra* at 1373–78. None of the three major justifications are therefore sufficient to support the absolute requirement of corroboration both as to the fact of the crime and the perpetrator thereof. Moreover, the rational against a corroboration requirement, that it prevents both the reporting and the successful prosecuting of sex crimes, seems indisputable. *See, e. g.,* Ludwig, The Case for Repeal of the Sex Corroboration Requirement in New York, 36 Brooklyn L. Rev. 378 (1970).

An examination of other jurisdictions shows that apparently only Nebraska and Idaho judicially (or legislatively) maintain the absolute requirement of corroboration

---

2. Although this is a rape case and we could limit our holding to a rule of corroboration in rape cases, we feel that the same reasoning applies to all the basic sex crimes.

3. We note here that the trial court, although expressing the belief that the requirement of corroboration was bad law, properly held that he was bound to follow the law as it existed at the time of trial.

in all rape cases. All other courts that have recently considered the question have held that the crime of rape should be treated no differently from any other crime. The court in *State v. Cabral, supra,* for instance, explained its reasoning as follows:

"The requirement for independent corroboration in sex-offense cases has been the subject of ever increasing criticism. Contemporary empirical studies suggest that the factors employed to support the corroboration requirement do not justify the rule. There is a great reluctance to report a rape. Amir, Patterns In Forcible Rape 27–28 (1971); Note, Rape and Rape Laws: Sexism in Society and Law, 61 Cal.L.Rev. 919, 921 (1973). Juries generally tend to view rape charges with skepticism and suspicion, especially when there is a suggestion of willingness or agreement on the part of the victim, Kalven and Zeisel, The American Jury 249–254 (1966), *see also Commonwealth v. Bailey,* 370 Mass. 388, 394, 348 N.E.2d 746, 750 (1976), and convictions, in the absence of aggravating circumstances, are the exception rather than the rule. Holstrom, The Victim of Rape Institutional Reactions 238 (1973) (the study of 109 rape cases: eighteen cases were tried; four concluded with a guilty verdict, ten not guilty, one with a hung jury, and three with a guilty verdict on a lesser charge).

"The corroboration requirement poses a major hurdle to a legitimate conviction for a sex offense. Due to the nature of sex crimes, eyewitnesses are seldom available. *Stapleman v. State,* 150 Neb. 460, 464, 34 N.W.2d 907, 910 (1946). . . . Most women, when confronted with a weapon-wielding assailant, make the sensible decision not to resist physically. Thus, they lack the bruises and torn clothing that would otherwise corroborate the crime. Juvenile complainants are more likely to be attacked by some one with whom they are acquainted and, therefore, are less likely to encounter a weapon and threat of battery and are less likely to scream and resist. Amir, Patterns in Forcible Rape 168–69, 237 (1971); Graves and

Francisco, Medicolegal Aspects of Rape, 4 Med. Aspects of Human Sexuality 109, 116 (April 1970).

"The corroboration requirement, in effect, arbitrarily singles out victims of sex offenses as a class whose credibility is immediately suspect." 410 A.2d at 441 (footnotes omitted).

The court in *United States v. Sheppard, supra,* elaborated further on how the corroboration rule both stands in the way of legitimate convictions and is unnecessary to protect an innocent defendant:

"The corroboration requirement poses a potentially severe obstacle to legitimate convictions for sex offenses. Operation of the rule serves to foreclose jury consideration of cases in which a highly credible complainant prosecutes charges, on the basis of her testimony alone, against the defendant whose account of the events is clearly less credible. And the mere existence of the rule may encourage victims never to report, and prosecutors never to bring charges for, rapes in which independent corroboration is absent or marginal. Elimination of the corroboration requirement, however, hardly leaves defendants unprotected against unjust convictions. The defendant is entitled to all of the established constitutional safeguards of our criminal justice system. Moreover, it is the trial judge's responsibility to charge the jury as to the government's burden of proving all elements of the offense beyond a reasonable doubt. Where the motivation of the complainant in bringing the charge is an issue, as in a case where the defendant contends that she consented to the intercourse, the defense attorney is free to emphasize to the jury the dangers of falsification, and the judge should instruct the jury as to those dangers and the difficulty of establishing consent. Finally, protection against unjust convictions on a case-by-case basis is afforded by the general rule that judgments of acquittal or reversals of convictions must be granted where substantial evidence does not exist to support a guilty verdict, whether or not indepen-

dent corroboration is technically present." 569 F.2d at 118–19 (footnotes omitted). *See also Arnold v. United States*, 358 A.2d 335, 343 (D.C.1976) ("[b]ecause of the adequacy of the constitutional protections available to every defendant in a sex case, we are persuaded that the requirement of corroboration of the victim's testimony presently serves no legitimate purpose").

Nor has this Court itself always unanimously upheld the requirement of corroboration. Justice Budge, dissenting in *State v. Hines*, 43 Idaho 713, 254 P. 217 (1927), put it this way:

"Had appellant been charged with the crime of robbery the conviction would be upheld upon the uncorroborated testimony of the prosecuting witness, provided the jury were satisfied, beyond a reasonable doubt, of appellant's guilt. In rape, under the majority opinion, we have a different rule as to the sufficiency of the proof. The prosecutrix stands unimpeached for truth and chastity; her evidence is uncontradictory, and the jury are satisfied, beyond a reasonable doubt, of appellant's guilt. Under the rule announced it is the duty of the court to instruct the jury that a conviction cannot stand in the absence of corroboration of the prosecutrix. She stands impeached unless corroborated. A female outraged, in the absence of corroborating evidence, is without redress under the rule announced. There should be no different rule in a rape case from any other criminal case, since it falls within no exception, and if the jury are satisfied, beyond a reasonable doubt, that rape has been committed, and that the defendant is guilty thereof, and there is sufficient competent evidence to support the verdict, the verdict should be upheld." *Id.* at 722, 254 P. at 219.

In *State v. Rassmussen*, 92 Idaho 731, 449 P.2d 837 (1969), this Court declined to require corroboration of the prosecutrix's testimony to support a conviction for the crime of procurement. Therein the Court observed, citing *State v. Anderson*, 6 Idaho 706, 59 P. 180 (1899), that the corroboration

rule in rape cases was court-made law, while Wigmore was quoted for the proposition that corroboration was not required at common law. 92 Idaho at 732–33, 449 P.2d at 838–39.

The Court proceeded in *Rassmussen*:

"The contrary rule requiring corroboration is almost exclusively a creation of statute. See 7 Wigmore on Evidence, § 2061, fn. 2, pp. 346–354 (3d ed. 1940), for a collection of these statutes. Referring to this statutory rule requiring corroboration for various sex crimes, Wigmore states:

" 'Furthermore, a rule of law requiring corroboration has probably little actual influence upon the jurors' minds over and above that ordinary caution and suspicion which would naturally suggest itself for such charges; and the rule thus tends to become in practice merely a means of securing from the trial judge the utterance of a form of words which may chance to be erroneous and to lay the foundation for a new trial. Finally, the purpose of the rule is already completely attained by the judge's power to set aside a verdict upon insufficient evidence, and under this power verdicts are constantly set aside, in jurisdictions having no statutory rule, upon the same evidence which in other jurisdictions would be insufficient under the statutory rule requiring corroboration.

" 'The fact is that, in light of modern psychology, this technical rule of corroboration seems but a crude and childish measure, if it be relied upon as an adequate means for determining the credibility of the complaining witness in such charges. * * * This statutory rule is unfortunate in that it tends to produce reliance upon a rule of thumb.' " 7 Wigmore on Evidence, § 2061, pp. 354–355 (3d ed. 1940).

Wigmore's reasoning is to us persuasive and has been followed in the vast majority of those jurisdictions not having a specific statute requiring corroboration. Indeed, it accurately states what has long

been the prevailing common law rule."
92 Idaho at 733, 449 P.2d at 839.

This Court also agreed that there are sufficient safeguards for the accused even without the requirement of corroboration:

"The credibility of the prosecutrix will at all times be an issue for resolution by the jury. Moreover, it is our opinion that the jury would naturally approach the uncorroborated testimony of a prosecutrix with caution, and any verdict would always be subject to the inherent power of the trial court, or of this court to set it aside if it is not supported by the evidence. We agree with Wigmore that these are sufficient safeguards for the accused." 92 Idaho at 735, 449 P.2d at 841.

In *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978), this Court held that it was improper to give an instruction that a rape charge is easily made but difficult to disprove:

"[T]he jury instruction that rape is easy to charge and difficult to disprove, and that a rape victim's testimony must be examined with caution is inappropriate in modern criminal proceedings. The majority of states hold that such an instruction is improper in sexual offense cases....

. . . .

"The California Supreme Court in ... *People v. Rincon-Pineda*, ... [14 Cal.3d 864, 123 Cal.Rptr. 119] 538 P.2d 247 (1975) ... after a review of empirical data ruled that the statement contained in such an instruction was factually erroneous. On the contrary, the studies reviewed showed rape was a charge difficult and traumatic to make and extremely difficult to establish in court.

"Other courts have disapproved of such a cautionary instruction on the ground it applies a stricter test of credibility to rape victims than other witnesses and, as such, invades the province of the jury by intimating an opinion on the credibility of the victim and the weight to be given her testimony....

"We agree that the use of a cautionary jury instruction in sex offense cases, such as that proposed by *Smoot*, is improper and disapprove of its future use." 99 Idaho at 863, 590 P.2d at 1009 (citations and footnotes omitted).

Similarly, we agree that an absolute rule in all sex crime cases requiring corroboration both as to the fact of the crime and the perpetrator thereof is no longer justified. The prosecutrix in the present case had never seen Byers before; she had no reason to falsely accuse him. Had the offense been only a simple battery, her eyewitness testimony would be sufficient to support a conviction. It is difficult to see a sound basis for continuing the philosophy that rape is distinctive from other crimes to the extent that corroboration is a necessary requirement.

This does not mean, however, that the testimony of a prosecutrix standing alone will henceforth in all cases be sufficient to support a conviction. The state must still show that a crime has been committed and that there is probable cause to believe that the accused committed it. I.C.R. 5(c). The court should grant a judgment of acquittal where the evidence is found insufficient to support a guilty verdict. I.C.R. 29. While credible eyewitness testimony of the prosecutrix, and nothing else, as to the identity of the perpetrator of the alleged crime will almost always satisfy these burdens, that is not necessarily so as to the charge that a crime has been committed. In removing the requirement of corroboration as to proof of the commission of a crime, we are mindful that a requirement of corroboration here would serve to protect innocent defendants, but would also prevent legitimate prosecutions. In light of the other protections afforded the defendant, e. g., the presumption of innocence, the right to a directed verdict of acquittal, the right to argue credibility to the jury, and the high standard of proof placed upon the state, we believe that the possible extra protection that might be afforded innocent defendants is outweighed by society's interest in legitimate prosecutions. We have no reluctance in leaving to the district courts, whose para-

mount obligation is always to see that justice is done, the initial responsibility of insuring that a conviction is based on sufficient evidence, and not on passion or prejudice.

We note that although in many other jurisdictions corroboration is seemingly required under certain circumstances,[4] the concern actually is with the sufficiency of the evidence.[5] In Texas, for instance, corroboration is required where the prosecutrix fails to promptly report the rape and where consent is an issue, *Villareal v. State*, 511 S.W.2d 500 (Tex.Cr.App.1974), as "the failure to make an outcry or promptly report the rape diminishes the credibility of the prosecutrix...." *Id.* at 502.[6] Similarly, in Colorado the need for corroboration is decided on an ad hoc basis, depending on the character of the prosecutrix, the probability or improbability of her testimony and whether her testimony is conflicting and contradictory. *LaBanc v. People*, 161 Colo. 274, 421 P.2d 474 (1966). See also *People v. Gray*, 40 Ill.App.3d 52, 351 N.E.2d 339 (1976) (no corroboration needed if testimony clear and convincing); *Robinson v. Commonwealth*, 459 S.W.2d 147 (Ky.1970) (if not contradictory or incredible, or inherently improbable, unsupported testimony may be sufficient); *State v. Thomas*, 351 Mo. 804, 174 S.W.2d 337 (1943) (corroboration required where the prosecutrix is a mature woman and the case is weak); *Gamble v.*

*State*, 576 P.2d 1184 (Okla.Cr.App.1978) (corroboration unnecessary unless testimony of prosecutrix is of such contradictory and unsatisfactory nature, or she is so impeached, that such testimony is clearly unworthy of belief and insufficient as a matter of law to sustain a conviction); *Thomas v. State*, 92 Wis.2d 372, 284 N.W.2d 917 (Wis.1979) (corroboration necessary where the testimony on its face shows unreliability).

What these cases appear to be saying is that although corroboration is not generally required in sex crime cases, in some cases the testimony of the prosecutrix standing alone will be insufficient to sustain a conviction. The very multiplicity of rules among these jurisdictions, moreover, demonstrates that any attempt to formulate a rule of corroboration to cover those situations where for one reason or another the testimony of the prosecutrix is not sufficient to support a conviction is more likely to breed confusion than understanding. We therefore simply state that the requirement of corroboration in sex crime cases in no longer the law in Idaho.

### III.

The final question we must decide is the effect of today's change in the law on this particular defendant, and other defend-

4. Some statutes also require corroboration in certain types of sex crimes. *See, e. g.,* N.Y. Penal Law § 130.16 (corroboration needed for consensual crimes where by law the prosecutrix could not consent); Miss. Code Ann. § 97–3–69 (corroboration needed for carnal knowledge of female 12–18 years old).

5. This actual distinction has been noted by some courts. *See, e. g., State v. Ani*, 257 N.W.2d 699 (Minn.1977) (even though corroboration not required, its absence in an individual case may call for an insufficient evidence holding).

6. In Idaho the short-lived Criminal Code of 1971 provided:

"(3) Prompt complaint. No prosecution may be instituted or maintained under this chapter unless the alleged offense was brought to the notice of public authority within three (3) months of its occurrence or,

where the alleged victim was less than twelve (12) years old or otherwise incompetent to make complaint, within three (3) months after a parent, guardian or other competent person specially interested in the victim learns of the offense.

"(4) Testimony of complainants. No person shall be convicted of any offense under this chapter upon the uncorroborated testimony of the alleged victim. Corroboration may be circumstantial. In any prosecution before a jury for an offense under this chapter, the jury shall be instructed to evaluate the testimony of a victim or complaining witness with special care in view of the emotional involvement of the witness and the difficulty of determining the truth with respect to alleged sexual activities carried out in private." 1971 Idaho Sess.Laws ch. 143, p. 686.

ants facing trial on similar charges.[7] Although there is sufficient evidence in the record to sustain the conviction under the rule we have announced today, the lack of corroboration connecting Byers with the crime leaves the evidence insufficient under the rule in existence at the time of his trial.[8] To apply today's decision in passing on the validity of Byers' conviction would be the equivalent of applying an ex post facto law, and is within the prohibitions of Article I, § 10 of the United States Constitution and Art. 1, § 16 of our Idaho Constitution.

In defining ex post facto laws, the United States Supreme Court in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), said:

"1st, every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. *Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the offense, in order to convict the offender.*" (Emphasis added.)

Moreover, "[i]f a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the same result by judicial construction." *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 1702, 12 L.Ed.2d 894 (1964). *Accord, Commonwealth v. Harrington*, 367 Mass. 13, 323 N.E.2d 895 (1975); *Marks v.*

*United States*, 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). *But see State v. Steelman*, 120 Ariz. 301, 585 P.2d 1213 (1978). As the United States Supreme Court explained in *Bouie v. City of Columbia, supra*:

"The fundamental principle that 'the required criminal law must have existed when the conduct in issue occurred,' Hall, General Principles of Criminal Law (2d ed. 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,' it must not be given retroactive effect. Id., at 61." 378 U.S. at 354, 84 S.Ct. at 1702–03.[9]

Obviously, our holding today alters the legal rules of evidence such that "less or different testimony than the law required at the time of the commission of the offense [is necessary] in order to convict the offender." In *Government of Virgin Islands v. Civil*, 591 F.2d 255 (3d Cir. 1979), a Virgin Island statute requiring that accomplice testimony be corroborated was repealed after the defendants' trial. The court found that there was insufficient evidence to support the conviction, and therefore ordered that the defendant be acquitted. The court analyzed the ex post facto issue as follows:

"Here the repeal of the corroboration statute reduces the amount of proof necessary for conviction.... [T]he statute's repeal would 'alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed.' *Id.* at 589, 4 S.Ct. at 210. [*Hopt v. Utah*, 110 U.S. 574, 45 S.Ct. 202, 28 L.Ed. 262

---

**7.** Although the state has asked us to abolish the requirement of corroboration, it has made no suggestion as to the effect of such a holding on this case, or on cases now pending in the trial courts.

**8.** Counsel for Byers was careful to renew his motion for a directed verdict after all the evidence was in. The trial court should have granted the motion, being bound by the rule as it existed at that time.

**9.** Since Byers' trial took place before our decision in *State v. Adair*, 99 Idaho 703, 587 P.2d 1238 (1978), where we mentioned the controversy over corroboration, *id* at 705 n.2, 1240 n.2, 587 P.2d 1238, it cannot be argued that Byers had "fair warning" of today's opinion. *See Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964).

(1884).] Since it would deprive the accused of substantial right that the law gave them at the time of the robbery, *Kring v. Missouri, supra*, 107 U.S. [221] at 232, 2 S.Ct. 443, [at 452, 27 L.Ed. 506], the repeal as applied to the case *sub judice* falls within the classes of changes prohibited by the ex post facto clause." 591 F.2d at 259.

Associate Judge Fickling, joined by three other judges, stated the following in *Arnold v. United States*, 358 A.2d 335 (D.C.1976):

"An *ex post facto* law has been defined as '[e]very law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.' *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648, 650 (1798). . . . If Congress passed a statute abolishing the corroboration requirement, the constitutional proscription against *ex post facto* laws would clearly prohibit its application to appellant. . . . If Congress is barred from passing such a law, this court is barred by due process from achieving the same result by judicial decision." *Id.* at 348 (Fickling, J., concurring and dissenting) (citations omitted).

*See also United States v. Williams*, 475 F.2d 355 (D.C.Cir.1973). We agree with this reasoning.[10] Abolishing the rule of corroboration does not affect merely the means of proof or rules of evidence, which would be permissible. *Hopt v. Utah*, 110 U.S. 574, 45 S.Ct. 202, 28 L.Ed. 262 (1884), but rather is a law passed "after a fact done by a . . . citizen, which shall have relation to such fact, and shall punish him for having done it." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 389, 1 L.Ed. 648 (1798). Under the law as it existed at the time of Byers' trial, there was insufficient evidence to convict him. To change the required quantum of proof necessary for a conviction and then hold that that standard had been met would violate the ban on ex post facto laws.

Finally, the United States Supreme Court has held that the Double Jeopardy Clause "precludes a second trial once a reviewing court has determined that the evidence introduced at trial was insufficient to sustain the verdict." *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 2154, 57 L.Ed.2d 15 (1978); *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978). Since the evidence under the law as it existed at the time of trial was insufficient to support the conviction, further proceedings are barred. *See Government of Virgin Islands v. Civil*, 591 F.2d 255 (3rd Cir. 1979); *Pollard v. State*, 264 Ark. 753, 574 S.W.2d 656 (1978); *In re Johnny G*, 25 Cal.3d 543, 159 Cal.Rptr. 180, 601 P.2d 196 (1979).

The rule we adopt today, that corroboration is generally not required to support a conviction, is to be applied prospectively to criminal trials commenced hereafter. *See, e. g., People v. Chi Ko Wong*, 18 Cal.3d 698, 135 Cal.Rptr. 392, 557 P.2d 976, 987 (1976). The commencement of a trial is, of course, when considerations of double jeopardy come into play.

The judgment of conviction is reversed, and the cause remanded with directions to dismiss the complaint and release Byers from any confinement which arose from the invalidated conviction in this case.

McFADDEN and DONALDSON, JJ., concur.

BAKES, Chief Justice, dissenting:

The majority may well be correct in concluding that the requirement of corroboration for sexual offenses should be abolished in view of our prior cases which have all but eliminated the requirement. However, such action is unnecessary to the resolution of this case because there was sufficient corroboration, as measured by the prior decisions of this Court, to sustain the conviction.

---

10.  *But see United States v. Sheppard*, 569 F.2d 114 (D.C.Cir.1977) (the court abolished the requirement of corroboration and affirmed the convictions without discussing the ex post facto problem); *Arnold v. United States*, 358 A.2d 335 (D.C.App.1976) (the court abolished the corroboration requirement, saying that although the trial court erred in refusing to give the corroboration instruction, such error was harmless).

A recent example is the case of *State v. Froelich*, 96 Idaho 685, 535 P.2d 658 (1975). That case involved the crime of lewd and lascivious conduct by a father against his fifteen year old daughter. The only evidence of the crime itself was the testimony of the daughter that her father sexually molested her in his truck and used vaseline in his acts. The corroboration in that case consisted of testimony of a sister that the prosecutrix often rode alone with her father in his pickup truck and that previously the sister had twice found and removed bottles of vaseline from his truck; testimony of a brother that the prosecutrix had ridden with her father in the truck on the night of the alleged incident; and testimony of family members that the father's treatment of the prosecutrix altered radically after the time of the alleged incident.

The Court in *Froelich* concluded "that the record contains sufficient corroborative evidence of the testimony of the prosecutrix to sustain the verdict of guilty." The corroboration in that case, however, was far from being unusual or indicative that the defendant had violated his daughter: children often ride with their fathers in motor vehicles; there was substantial testimony in that case that vaseline is a product of common usage in the mechanic trade, in which the father was engaged and in which he used his pickup truck; and changes in familial affections or treatment can be caused by a host of different factors. In fact, none of the evidence directly corroborated the conclusion that the prosecutrix had been molested. There were no bruises, no examination results, no proximate reports of the attack, no physical evidence at all to indicate that the molestation actually occurred. However, it has long been the rule that where the reputation of the prosecutrix is unimpeached, evidence of the surrounding circumstances is sufficient for corroboration, *id.* at 686, 535 P.2d 658, and that is exactly the type of evidence found sufficient in *Froelich*.

Certainly, in sexual assault cases the much more important fact to be corroborated is that the crime has actually been committed. A crime must be shown before identity becomes important. Once the crime itself is corroborated, the veracity of the prosecutrix is also established. The evidence in the present case is much more firm than that in *Froelich* because the present crime was directly corroborated by the physician's examination and the reports of the neighbors as to the prosecutrix's mental state immediately after the incident. In addition, the testimony of the prosecutrix in the present case is clear that she had a good look at her assailant and later was able to identify him in a restaurant. Given the firm corroboration that a crime occurred, there is no reason to presume that the prosecutrix would seek to charge an innocent person with the crime.

In *Froelich*, however, there was no direct evidence of any nature to corroborate that the molestation actually occurred, but rather the corroboration went to the identification of the defendant. In fact, each point of corroborative evidence in *Froelich* was easily shown to be consistent with the defendant's claims of innocence. Nevertheless, a mere showing of consistency with innocence is not sufficient to erase the corroborative value of the evidence. It necessarily follows in the case at bar that just because many other people may possess blue barreled pistols does not mean that possession of a blue barreled pistol was not corroborative on the issue of identity. The weight to be given that evidence properly rests with the jury. Such is particularly true when the evidence firmly corroborates that the crime took place, thereby establishing the veracity of the prosecutrix. If *Froelich* contains sufficient corroboration to sustain the conviction in that case, then the corroboration in the present case is more than sufficient. I would affirm the conviction.

SHEPARD, J., concurs.